# In the United States Court of Federal Claims

No. 15-156C
(Filed:  July 21, 2015)*
**\*Opinion originally filed under seal on March 23, 2015**

|  |  |  |
|---|---|---|
| KWR CONSTRUCTION, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Bid Protest; Price Completeness; Price |
| v. | ) | Reasonableness; Price Realism; |
| | ) | Remand to Agency |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

*Frances J. Haynes*, Phoenix, AX, for plaintiff.

*Matthew P. Roche*, Civil Division, United States Department of Justice, Washington, DC, with whom were *Benjamin C. Mizer*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Franklin E. White, Jr.*, Assistant Direector. *Erika L. Whelan Retta*, Air Force Legal Operations Agency, Joint Base Andrews, MD, of counsel.

## O P I N I O N

**FIRESTONE**, *Judge*.

Pending before the court are cross-motions for judgment on the administrative record filed by plaintiff, KWR Construction, Inc. ("KWR"), and defendant the United States ("the government"), in connection with the United States Air Force's ("agency") award of Contract Nos. F4887-14-D-0002, FA4887-14-D-0003, FA4887-14-D-0004, and FA4887-14-D-0005 to Herman Construction Group, Inc. ("Herman"), Rore, Inc. ("Rore"), Mirack & Macro-Z Technology ("M & M"), and Premier Engineering

Corporation ("Premier").  In its complaint filed under 28 U.S.C. § 1491(b), KWR alleges, among other things, that: (1) the Air Force's determination that KWR's price proposal was unacceptable on the grounds that it was incomplete, unreasonable, and unrealistic is not supported by the record and thus the decision to eliminate KWR from the competition was irrational; (2) the Air Force violated procurement law by phoning KWR and encouraging KWR to lower its prices in connection with an amendment to the solicitation that required offerors to review their price proposals; (3) the solicitation's price terms and evaluation standards violated the FAR; (4) the Air Force applied more stringent standards to KWR's price evaluation than to the other offerors and the awardees; (5) the Air Force engaged in bad faith tradeoffs; and (6) the Source Selection Evaluation Board's ("SSEB") decision failed to provide the best value for the government by failing to consider KWR's past performance evaluation prior to rejecting its price proposal.

For the reasons that follow, the court finds that KWR's challenges to the Air Force's rejection of its price proposal are well-founded and that a remand to the Air Force is necessary in order for the Air Force to properly explain its rejection of KWR's price proposal with a reasoned explanation or adopt a different decision with a reasoned explanation.

## I.      Background

### A.      The Procurement

At issue in this case is a Multiple Award Construction Contract ("MACC") Indefinite-Delivery Indefinite-Quantity for Luke Air Force Base in Glendale, Arizona. Administrative Record ("AR") 1447, 1625.  The MACC will be used to award multi-

discipline construction requirements (*i.e.*, civil, mechanical, electrical, demolition, etc.) with additional capability to perform large-scale design build projects necessary to support larger requirements at Luke Air Force Base.  AR 1625.  Under the terms of the MACC, contractors are to furnish all plant, labor, material, equipment, transportation, and supervision necessary to accomplish each task order in accordance with the contract, specifications, and additional terms and conditions.  Id.  The Air Force anticipated awarding three to five contracts, which represented the best value in the areas of past performance and price, to include a base year period beginning on August 1, 2014, and four one-year option periods.  Id. at 183, 1447.  The solicitation, RFQ FA4887-13-R-0005 (solicitation or RFP), was posted to Federal Business Opportunities website on June 20, 2013 with a closing date of July 30, 2013.  Id. at 118.

## 1.    Relevant Solicitation Provisions

The evaluation process was set out in Section M(C)(1) of the Solicitation which stated that "[e]ach step of this process is codependent upon the step immediately preceding; the government will only rate those proposals in Step 2 [Price of Demonstration Project] that were deemed Acceptable in Step 1 [Technical Acceptability]. At the conclusion of Step 2, the government would evaluate Past Performance of the lowest priced acceptable offerors, assign a Past Performance Confidence rating and continue in succession based on price assigning Past Performance Confidence ratings." Id. at 189.  Accordingly, a technical proposal that was "Unacceptable" in Step 1 would not be evaluated in Step 2; in turn, a price proposal that was not complete, reasonable, and realistic in Step 2 would not be evaluated for past performance in Step 3.  Id.

3

With respect to the price evaluation performed in Step 2, the Solicitation provided that proposals would be evaluated in three ways.  First, the Air Force would determine whether the price submission was complete, providing "[a]ll information/data required by the solicitation" and that all information received was free of omissions or errors.  Id. at 186, 189.  Second, prices would be evaluated for reasonableness; that is, the total price "represents an amount that a prudent person would pay in a competitive business environment."  Id. at 186.  Third, the agency would determine whether the price proposal was realistic.  Section M(B)(1)(b)(i) and Section M(B)(3)(d) of the Solicitation provide that "[r]ealism is based on the items of the demonstration project price proposal to determine whether prices are realistic for the work to be performed, reflect a clear understanding of the requirements, and are consistent with the various elements of the offeror's technical proposal."  Id.  The Solicitation provided that "[u]nrealistically low or high prices may be grounds for eliminating a proposal from competition on the basis that the offeror does not understand the requirement."  Id.

The Solicitation also stated that the "Government intends to evaluate proposals without discussions with offerors.  Therefore, it is imperative that each offeror submit their best terms with their initial proposal . . . .  Offerors will not assume that they will be contacted or afforded an opportunity to qualify, discuss or revise their proposals."  Id. at 173-74.

### 2.    Amendments to the Solicitation

Eight amendments were issued before initial proposals were due.  See generally Id. at 194-248.  The RFP's closing date was extended from July 30, 2013 to August 5, 2013 to account for these changes.  Id. at 118, 238.

### B.    Initially, the Source Selection Board Approved KWR's Proposal

On August 5, 2013, the Air Force received twenty-five proposals; it anticipated issuing awards within 120 days of receipt.  Id. at 1447, 118, 233.  The SSEB conducted an initial evaluation of the 25 proposals received.  Id. at 1633.  The SSEB found 13 of the proposals received, including KWR's, to be technically acceptable during Step 1 of the evaluation.  Id.  In Step 2, the Air Force evaluated the price proposals of the 13 technically acceptable offerors, of which 11 were found to be "complete, reasonable, and realistic" in accordance with the solicitation, including KWR's.  Id. at 1633-34.  KWR's price proposal was then evaluated for past performance during Step 3, which resulted in a performance confidence rating of "Substantial Confidence."  Id. at 1953 n. 4.

### C.    Prior to Award, the Air Force Amended Its Solicitation Again to Require Offerors to Provide Updated Resumes and Verify Pricing

Although the evaluation process was concluded in a timely manner, various events—including the sequestration and furloughs of Government personnel—resulted in significant delays to the award of the contracts.  Id. at 1947.  Accordingly, the Air Force issued Amendment 0009 on April 23, 2014, requesting that offerors verify that the prices in the proposal were still current (or provide updated pricing with a detailed explanation

underlying the changes) and resubmit resumes of key personnel to account for any

changes in employment.[1]  Id. at 242-43.  Amendment 0009 stated:

> The purpose of this amendment is to obtain current resumes (Factor 1,
> Subfactor 3 – Management Plan) of key personnel in accordance with
> Section L(B)(1)(c)(2) and any unit price changes (Factor 2 – Price
> Proposal) in accordance with Section L(B)(2)(a), due to the duration of
> elapsed time since receipt of proposals,  Offerors are urged to submit in
> strict compliance with both the Section L references above and the table
> found at Section M(B)(1)(d)(iii).  It should be further noted that any unit
> price changes in response to Factor 2 – Price Proposal shall include detailed
> explanations for any resultant unit price changes to the price proposal
> submission.

Id. at 1150.  Offerors were also asked to extend the proposal acceptance period and

instructed to respond to Amendment 0009 by April 30, 2014.  Id.

### D.    After KWR Revised Its Offer, the Source Selection Evaluation Board Found KWR's Price Proposal Unacceptable

After receiving the responses to Amendment 0009, the SSEB performed new

evaluations of proposals that had been revised.  See id. at 1948 n.1.  KWR's offer was re-

evaluated because it had submitted a revised price proposal. Compare id. at 677-78, with

id. at 781-82.  In its submission following Amendment 0009, KWR stated: "KWR

Construction Inc. appreciates the opportunity to update our Price Proposal to reflect

current commodity conditions and labor hour estimates.  Our overhead factors have

---

[1] Prior to the issuance of Amendment 0009, the contracting officer called offerors to inform them that the amendment was being issued and its requirements—that is, updated resumes and verification that prices were still current.  See AR 1146-48.  Because calls are not included in the record, it is not known whether the CO called all offerors.  He then emailed the amendment and accompanying memorandum to each of the 25 offerors.  Id.

recently changed due to current volume of work in progress.  We have lowered our profit margin in order to be as competitive as possible."  AR 780.

In evaluating KWR's revised price proposal, the SSEB noted several deficiencies in KWR's Construction Cost Estimate Breakdown (AF Form 3052).  Id. 1416, 5264-5267.  The summary sheet taken from the evaluators also states that KWR's proposal was also unreasonable and unrealistic based on its pricing.  Id.  In particular, the evaluation summary states:

| DESCRIPTION | YES | NO | NOTES |
|---|---|---|---|
| Completeness: Did the offeror provide all information/data required to render the price as complete? | | X | The offeror failed to include pricing for roof work, the Netshelter SX enclosure, test & balance (air or CFMs), and training and asbuilts |
| Price Reasonableness: Reasonableness is based on the total evaluated price compared to historical prices for similar efforts, comparison to the Independent Government Estimate (IGE), and price competition obtained by the other offerors' proposals submitted in response to this RFP.  Did the offeror provide a reasonable price that a prudent person would pay in a competitive business environment? | | X | The offeror's price was [. . .]% lower than IGE and [. . . ]% lower than the average of the proposed Technically Acceptable offeror's [sic].  This price is unreasonably low based on the offeror's technical approach. |
| Price Realism: Did the offeror provide a Realistic price based on the items of the demonstration project for the work to be performed, reflect a clear understanding of the requirements, and are [sic] consistent with the various elements of the offeror's technical proposal? (Unrealistically low or high prices | | X | The offeror's material and labor cost alone is [. . . ]% less than the IGE.  The offeror's average labor rate is $[. . .] less than IGE and other offers.  Based on the TEP, it is unrealistic that KWR can accomplish the demonstration project. |

| | | | |
|---|---|---|---|
| may be grounds for eliminating a proposal from competition on the basis that the offeror does not understand the requirement.) | | | |

Id. at 1416. Based on this evaluation, the Air Force determined that KWR's price proposal was incomplete, unreasonable and unrealistic, and its proposal was not further considered. Id. at 1415-16.

Ten offerors were determined to have complete, reasonable, and realistic prices. AR 1634. Those offerors' total evaluated prices were ranked from lowest to highest, and their proposals were evaluated for past performance in Step 3. Id. at 1635-36. On July 28, 2014, at the conclusion of the past performance evaluation, the Air Force made awards to Herman, Rore, M&M, and Premier, the four offerors with the lowest total evaluated prices that also received a Substantial Confidence Past Performance rating. Id. at 1636-37. KWR was notified accordingly and received the requested debriefing. Id. at 1818-19, 1882-1903.

The reasons for rejecting KWR's proposal at the debriefing, however, differed from those identified in the SSEB summary, noted above. The debriefing materials stated as follows:

| DESCRIPTION | YES | NO | NOTES |
|---|---|---|---|
| Completeness: Did the offeror provide all information/data required to render the price as complete? | | X | The offeror failed to include labor pricing for HVAC installation, Server Rack installation, and incorrectly inputted Elec load study in material |
| Price Reasonableness: Reasonableness is based on the total evaluated price compared to historical prices for similar efforts, | | X | The offeror's price was [. . .]% lower than IGE and [. . .]% lower than the average of the proposed Technically Acceptable offeror's |

| | | |
|---|---|---|
| comparison to the Independent Government Estimate (IGE), and price competition obtained by the other offerors' proposals submitted in response to this RFP.  Did the offeror provide a reasonable price that a prudent person would pay in a competitive business environment? | | [sic].  The offeror's material and labor cost alone is [. . . ]% less than the IGE.  A prudent person would not pay this price knowing it has missing items. |
| Price Realism: Did the offeror provide a Realistic price based on the items of the demonstration project for the work to be performed, reflect a clear understanding of the requirements, and are [sic] consistent with the various elements of the offeror's technical proposal?  (Unrealistically low or high prices may be grounds for eliminating a proposal from competition on the basis that the offeror does not understand the requirement.) | X | The offeror failed to price test & balance (air or CFMs), training, and asbuilts in accordance with their technical approach.  The offeror did not reflect a clear understanding of the requirements. |

There is no explanation in the record for these differences.

**D.      The Air Force Denies KWR's Agency Level Protest**

KWR filed a protest with the agency on August 8, 2014, followed by an amended

protest on August 15, 2014.  Id. at 5614-99.  In its agency-level protest, KWR alleged

that its proposal was reasonable and realistic, id. at 5614-15, 5620-21; that its proposal

was complete, id. at 5616, 5622; that the SSEB neglected to appropriately consider and

apply its own overarching evaluation criteria, id. at 5617, 5623; and that its submission of

AF Form 3052 was in compliance with the instructions to offerors, id. at 5625.  On

November 7, 2014, the agency denied KWR's agency protest.  Id. at 5645.

**E.      The GAO Dismisses KWR's Protest**

On November 17, 2014, KWR filed a protest at the Government Accountability

Office (GAO) and submitted a supplemental protest on December 29, 2014.  Id. at 1904,

5279.  In its protest, KWR alleged that the Air Force made an improper "Best Value"

determination; failed to make tradeoffs that considered KWR's past performance; failed

to adequately document and support its evaluation and award decision; and failed to

account for publicly available suspect information regarding the awardees.  Id. at 1905,

1907, 1914.  Additionally, KWR alleged that is price was complete, reasonable and

realistic.  Id. at 1908, 1911.

In its supplemental protest, KWR alleged that the Air Force lacked necessary

evaluation documentation, did not meaningfully consider KWR's proposal or compare

KWR's "superior positioning" to that of other offerors or otherwise follow its own

evaluation criteria; and based its decision on a flawed competitive range determination.

Id. at 5791-92.

Additionally, KWR alleged that the Air Force failed to consider its pre-

Amendment 0009 evaluation of KWR's past performance; failed to adequately document

and support its decisions regarding KWR's labor rates; and circumvented the Small

Business Act.  Id.  Finally, KWR alleged that the Air Force acted in bad faith by using

tradeoffs but then telling KWR that it did not use tradeoffs.  Id. at 5792.

On January 28, 2015, GAO dismissed KWR's protests.  Id. at 5964.  The GAO

explained that because Equa Solutions, Inc. v. United States, No. 14-1214C (Fed. Cl.)—

which involved the same procurement—was pending before the United States Court of

Federal Claims, the case had to be dismissed.

On February 18, 2015, KWR timely filed the pending complaint in this Court.
Briefing was completed on an expedited basis and oral argument was held on March 20,
2015.

## II.     STANDARD OF REVIEW

The standard of review in bid protest cases is well-established. The court will
uphold a procurement decision unless it is found to be "arbitrary, capricious, an abuse of
discretion, or otherwise not in accordance with law." Banknote Corp. of Am., Inc. v.
United States, 365 F.3d 1345, 1350 (Fed. Cir. 2004).  To prevail, the protester must
demonstrate that either (1) the agency's decision was irrational, id. at 1351, or (2) the
agency violated a regulation or procedure in a manner that significantly prejudiced the
protester, Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1358 (Fed. Cir. 2009).
Where a protester seeks to demonstrate that the procurement decision was irrational, it
must demonstrate that the agency's exercise of discretion lacked any "coherent and
reasonable explanation." Banknote, 365 F.3d at 1351.  This standard is "highly
deferential," Weeks Marine, 575 F.3d at 1368-69, and a plaintiff "bears a heavy burden
of showing that the award decision had no rational basis," Banknote, 365 F.3d at 1351.
Where a rational basis exists, the court shall not substitute its judgment for that of the
agency, "even though it might, as an original proposition, have reached a different
conclusion as to the proper administration and application of the procurement
regulations." Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989)
(citing M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971)).

Pursuant to this standard, an agency's procurement decisions are entitled to a "presumption of regularity," and "the agency's action must be upheld as long as a rational basis is articulated and relevant factors are considered." <u>Emery Worldwide Airlines, Inc. v. United States</u>, 264 F.3d 1071, 1085 (Fed. Cir. 2001) (citations omitted); <u>Orion Tech., Inc. v. United States</u>, 704 F.3d 1344, 1351 (Fed. Cir. 2013) ("Agencies are entitled to a high degree of deference when faced with challenges to procurement decisions. A protestor . . . may only prevail when it is clear that the agency's determinations are irrational and unreasonable." (citations omitted)) (citing <u>R & W Flammann GmbH v. United States</u>, 339 F.3d 1320, 1322 (Fed. Cir. 2003); <u>Impresa Construzioni Geom. Domenico Garufi v. United States</u>, 238 F.3d 1324, 1332-33 (Fed. Cir. 2001)).

In reviewing a motion for judgment upon the administrative record pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims, the court must decide whether, given all the disputed and undisputed facts, a party is entitled to judgment based upon that evidence. <u>A&D Fire Protection, Inc. v. United States</u>, 72 Fed. Cl. 126, 131 (2006) (citing <u>Bannum, Inc. v. United States</u>, 404 F.3d 1346, 1356 (Fed. Cir. 2005)). In sum, in order to set aside a procurement decision, the protestor has the heavy burden of establishing that: (1) the procurement official's decision "had no rational basis;" or (2) there has been a "clear and prejudicial violation of applicable statutes or regulations." <u>Centech Group v. United States</u>, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (quoting <u>Impresa</u>, 238 F.3d at 1333).

## III. DISCUSSION

###### A.   The Agency's Decision Rejecting KWR's Price Proposal Is Not Supported by the Administrative Record

The court finds that the dispute in this case turns on whether the Air Force's decision that KWR's price proposal was incomplete, unreasonable, and unrealistic is rationally supported. After reviewing the record and considering the parties' arguments, the court finds that the Air Force's decision is wrong in several respects and conflicting in others. As such, it is impossible for the court to determine the basis of the Air Force's decision to reject KWR's price proposal.

First, as noted above, the record demonstrates that the Air Force provided a different rationale for rejecting the price proposal before the SSEB than at the debriefing. During the evaluation, the SSEB created the following summary:

| DESCRIPTION | YES | NO | NOTES |
|---|---|---|---|
| Completeness: Did the offeror provide all information/data required to render the price as complete? | | X | The offeror failed to include pricing for roof work, the Netshelter SX enclosure, test & balance (air or CFMs), and training and asbuilts |
| Price Reasonableness: Reasonableness is based on the total evaluated price compared to historical prices for similar efforts, comparison to the Independent Government Estimate (IGE), and price competition obtained by the other offerors' proposals submitted in response to this RFP. Did the offeror provide a reasonable price that a prudent person would pay in a competitive business environment? | | X | The offeror's price was [. . .]% lower than IGE and [. . .]% lower than the average of the proposed Technically Acceptable offeror's [sic]. This price is unreasonably low based on the offeror's technical approach. |
| Price Realism: Did the offeror provide a Realistic price based on the items of the demonstration | | X | The offeror's material and labor cost alone is [. . .]% less than the IGE. The offeror's average labor |

| | | | |
|---|---|---|---|
| project for the work to be performed, reflect a clear understanding of the requirements, and are [sic] consistent with the various elements of the offeror's technical proposal? (Unrealistically low or high prices may be grounds for eliminating a proposal from competition on the basis that the offeror does not understand the requirement.) | | | rate is $[. . .] less than IGE and other offers.  Based on the TEP, it is unrealistic that KWR can accomplish the demonstration project. |

Id. at 1416.  However, the rationale provided as part of the debriefing included the

following summary:

| DESCRIPTION | YES | NO | NOTES |
|---|---|---|---|
| Completeness: Did the offeror provide all information/data required to render the price as complete? | | X | The offeror failed to include labor pricing for HVAC installation, Server Rack installation, and incorrectly inputted Elec load study in material |
| Price Reasonableness: Reasonableness is based on the total evaluated price compared to historical prices for similar efforts, comparison to the Independent Government Estimate (IGE), and price competition obtained by the other offerors' proposals submitted in response to this RFP.  Did the offeror provide a reasonable price that a prudent person would pay in a competitive business environment? | | X | The offeror's price was [. . .]% lower than IGE and [. . .]% lower than the average of the proposed Technically Acceptable offeror's [sic].  The offeror's material and labor cost alone is [. . .]% less than the IGE.  A prudent person would not pay this price knowing it has missing items. |
| Price Realism: Did the offeror provide a Realistic price based on the items of the demonstration project for the work to be performed, reflect a clear understanding of the requirements, and are [sic] consistent with the various elements of the offeror's technical proposal?  (Unrealistically | | X | The offeror failed to price test & balance (air or CFMs), training, and asbuilts in accordance with their technical approach.  The offeror did not reflect a clear understanding of the requirements. |

14

| low or high prices may be grounds for eliminating a proposal from competition on the basis that the offeror does not understand the requirement.) | | | |
|---|---|---|---|

Id. at 1899.

Based on the evidence in the record, it is not possible to determine whether the Air Force's rationale included all of the stated reasons or whether it was changed after the fact.  For example, the items that the Air Force found to be missing are different in each version of the summary, with no explanation as to why the agency chose to focus on different items.  This is especially important where one of the original items (roof work) has now been conceded by the government to not be missing and another (Netshelter SX enclosure) was not required to be its own line item and was not priced separately in the proposals of successful offerors.

Second, it is not clear how the price evaluation completed by the evaluators became the rationale stated in the decision, as the single sheet provided in the record includes check marks under both "YES" and "NO" for some items, positive and negative comments, and appears to have been filled in or supplemented at a later date.[2]  Id. at 5264-66.

---

[2] It is not clear from the record why KWR's price proposal was apparently re-evaluated on June 18, 2014 and again on June 20, 2014, as the evaluation sheet indicates.  AR 5264-5267.  This may have been part of the post-amendment re-evaluation, or may have been a separate re-evaluation unique to KWR.

Third, there is nothing in the record to suggest that the Air Force considered KWR's explanation of the post-amendment reductions in its price.  When it submitted its post-amendment price reductions, KWR explained its reasoning and methods in a letter to the CO, stating: "KWR Construction Inc. appreciates the opportunity to update our Price Proposal to reflect current commodity conditions and labor hour estimates.  Our overhead factors have recently changed due to current volume of work in progress.  We have lowered our profit margin in order to be as competitive as possible."  AR 780.  There is no indication that the Air Force considered the provided reasoning when making its reasonableness determination.  This is especially important considering that, prior to the amendment, the Air Force had determined the proposal to be reasonable.  An examination of the changed costs reveals that, while many prices were altered somewhat, the major changes occurred in KWR's profit and overhead and labor rates for supervisory positions, as well as prices for HVAC equipment and electrical load studies.  As the agency's analysis focused almost exclusively on a gross percentage difference between KWR's proposal and the IGE, it is not clear to the court what aspects of the proposal caused it to be deemed unreasonable.[3]

Fourth, it is unclear how the Air Force performed the math to arrive at the percentages used to determine reasonability.  The agency found that KWR's materials and labor "alone" were [. . .]% less than the IGE.  However, the price proposal provided a

---

[3] At oral argument, the government argued that the initial finding of reasonableness was an error by the agency.  While this may be true, there is no evidence in the record to support such a finding.

material cost of $[. . .] and a labor cost of $[. . .], for a total material and labor cost of $[. . .].  AR 781.  The IGE provided a material cost of $[. . .] and a labor cost of $[. . .], for a total material and labor cost of $[. . .].  Id. at 2.  It is undisputed that KWR's material and labor cost "alone" is therefore not [. . .]% lower than the IGE's material and labor cost, but rather [. . .]% higher.[4]

In this connection, the Air Force's method for analyzing KWR's price proposal to the IGE is not clear.  It appears that the major deviation in costs from the IGE was the APC UPS Upgrade: the IGE priced it at $[. . .] in direct costs alone, id. at 7, while KWR priced it at $[. . .] in material costs alone, id. at 781.  Especially considering that this element's price provided a significant portion of the agency's reasoning for finding the proposal unreasonable, the lack of a clear explanation of whether KWR's proposed price for the item was reasonable makes it difficult to determine whether the overall determination of reasonableness was rational.  Further, these missing explanations are made more important by the fact that the agency found another offeror's price proposal to be complete, reasonable, and realistic when it was [. . .]% higher than the IGE, [. . .]% higher than the average of technically-acceptable offerors, had a material cost that was [. . .]% higher than the IGE, and had a labor cost that was [. . .]% higher than the IGE.  Id. at

---

[4] The government argues that the percentage can be explained by adding in the direct costs, as identified on the front page of the evaluation sheet.  AR 5264.  However, the back page of the sheet indicates that there was a difference in "materials costs" that is not supported.  Id. at 1187.  Moreover, the final summary refers to material and labor costs.  Id. at 1416.  Accordingly, it is unclear which one of these three possibilities the Air Force was applying when it made its decision to reject KWR's price proposal.

1421-22.  There is no explanation as to why prices significantly higher than the IGE were acceptable, whereas those lower than the IGE were not.

Finally, the Air Force may have failed to consider all of the factors required for price evaluation in the solicitation.  The Air Force was required to consider historical prices, the IGE and comparative prices in making its price reasonableness determination. Id. at 186.  It is unclear whether the agency considered historical prices at all in determining the reasonableness of the pricing, as required by the solicitation.  While the government argued that historical prices were incorporated by reference in the IGE, which was based on previous projects and their prices, see id. at 1, historical prices were included as a separate evaluation factor and thus should have been separately evaluated even if they were used in creating the IGE.

## IV.   CONCLUSION

Based on the facts of this case, the court finds that it must vacate the Air Force's rejection of KWR's proposal for award consideration, and therefore a remand to the Air Force is necessary.  Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985).  The Tucker Act provides this court with "the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just."  28 U.S.C. § 1491(a)(2).

Accordingly, plaintiff's motion for judgment on the administrative record is **GRANTED-IN-PART** and the government's cross-motion for judgment on the

administrative record is **DENIED**.[5]  The agency's decision to reject KWR based on its price proposal is hereby **VACATED** and **REMANDED** to the Air Force for a period of 14 days, until **Monday, April 6, 2015**.[6]  On remand, the Air Force must explain its rejection of KWR's price proposal with a reasoned explanation or adopt a different decision with a reasoned explanation.  Under either approach, the agency should address the issues identified above.  Pursuant to RCFC 52.2(b), the government shall submit a status report on or before the conclusion of the remand period informing the court of the status of the remand proceedings.

      **IT IS SO ORDERED.**


                                      s/Nancy B. Firestone
                                      NANCY B. FIRESTONE
                                      Judge

---

[5] The court need not reach the other arguments raised by plaintiff in its motion for judgment on the administrative record because of this decision.  Plaintiff additionally filed two motions to supplement the administrative record, a motion to strike, a renewed motion for preliminary and permanent injunctions, a motion for leave to file a brief on available remedies, and moved for discovery in the alternative to its motion for judgment on the administrative record.  Based on the court's remand of the agency decision, those motions are **DENIED** as **MOOT**.

[6] As the government has represented that no action will be taken on the pending issuance of task orders under this contract until some time after April 9, 2015, the court finds that it is possible to fully resolve these issues before that date.  Accordingly, the court need not consider the propriety of injunctive relief.